# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE FRANCESCONI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:17-cv-01391 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF VALERIE FRANCESCONI AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Valerie Francesconi asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff seeks judicial review of the decision denying her application for benefits, asserting the administrative law judge erred in evaluating her credibility. Because the ALJ failed to apply the proper legal standards, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

Plaintiff filed her application for benefits on July 30, 2014, in which she alleged disability beginning October 25, 2013. (Doc. 11-6 at 5) The Social Security Administration denied the applications at the initial level and upon reconsideration. (*See generally* Doc. 11-4) Plaintiff requested a hearing, and testified before an ALJ on July 8, 2016. (Doc. 11-3 at 19) The ALJ determined Plaintiff

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as the defendant.

1

was not disabled under the Social Security Act, and issued an order denying benefits on October 27, 2016. (*Id.* at 19-29) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on August 14, 2017. (*Id.* at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.  Medical Evidence**

In August 2007, Plaintiff had a spinous process distraction device inserted at a single level in her lumbar spine. (Doc. 11-11 at 57) This was followed by a lumbar spine fusion in February 2008. (*Id.*) On November 14, 2013, Plaintiff had a third spinal surgery that included lumbar decompression at the L5-S1 level, fusion of the L5-S1 level, re-instrumentation at the L5 level, and posterolateral spinal fusion at the L3-4 and L5-S1 levels. (Doc. 11-9 at 9, 10)

In considering the medical evidence at issue, the ALJ observed[2]:

> Noman O. Khan, M.D. performed a post-operative examination of the claimant on February 25, 2014. The claimant informed that her pain had been well-controlled with medication. Dr. Khan found that the claimant was neurologically and vascularily intact in the lower extremities. The doctor noted that x-rays showed good and consistent alignment of instrumentation in comparison to previous imaging studies [Exhibit 4F9-10]. Dr. Khan noted on May 27, 2014, that from a radiographic and surgical perspective, the claimant's lumbar surgical fusion appeared well-healed and solid [Exhibit F428].
>
> Andal V. Kadambi, M.D., the claimant's primary care provider, provided the claimant with regular follow-up care and medication treatment for her obesity; Meniere's disease; asthma, mild, persistent; and low back pain syndrome from March 24, 2014 to July 13, 2016. Dr. Kadambi consistently found the claimant to be in no acute distress and found her lungs to be clear to auscultation, bilaterally, with no wheezes, rhonchi, or cackles [Exhibits 3F48-51, 59-62, and 69-72; 6F2-5; 9F3-5; 14F5-6, 33-36, 41-44,

---

[2] Plaintiff's sole challenge to the ALJ's decision relates to the adverse credibility analysis. (*See* Doc. 18 at 7) Because Plaintiff does not challenge the ALJ's summary of the medical evidence, the Court here adopts the ALJ's summary of the evidence. Nevertheless, the Court has reviewed and considered the entirety of the medical record.

3

and 84-91; and 16F89-93]. Dr. Kadambi noted on January 20, 2015, that the claimant was walking with a cane [Exhibit 9F3-5].

Shirley Xiaoying Wu, M.D., evaluated the claimant on June 6, 2014, for pain management follow-up. The claimant stated that the back surgery helped reduce her left leg pain, but she still had significant back pain, weakness at the right leg, and numbness at the left leg. She currently participated in physical therapy and used the bike and treadmill at the gym on a daily basis. Dr. Wu found the claimant to have normal chest expansion with lungs clear to auscultation without wheezes or rales. The doctor found the claimant to have a reduced range of motion of the lumbar spine with positive Patrick's sign and facet loading. The doctor noted that the claimant had diffuse palpation tenderness in the lower back and decreased sensation to light touch and pinprick at the left lateral calf and foot. The doctor found the claimant to have normal deep tendon reflexes and normal motor strength at the lower extremities with normal muscle bulk and tone. The claimant had negative straight leg raises in the seated position, bilaterally [Exhibit 3F37-40]. Dr. Wu noted on June 27, 2014, that the claimant had intact sensation to light touch and pinprick at the bilateral lower extremities [Exhibit 3F49-52]. Dr. Wu noted on January 8, 2016, that the claimant had decreased sensation to light touch and pinprick at the L5 dermatome and diffuse palpation tenderness especially in the lower back and buttocks [Exhibit 14F37-40]. The claimant regularly attended follow-up appointments and received medication treatment from Dr. Wu through July 15, 2016. The doctor's findings upon physical examinations remained generally stable [Exhibits 6F13-16 and 25-28, 14F23-26, 37-40, 45-48, 55-58, and 74-77; and 16F106-109].

Treatment notes, dated December 19, 2014, indicate that the claimant had an asthma exacerbation. The claimant was found to have scattered expiratory wheeze, but no rales, rhonchi, or dullness [Exhibit 6F38-41].

Treatment notes, dated April 16, 2015, indicate that the claimant underwent a bilateral sacroiliac joint injection [Exhibit 14F67-68].

(Doc. 11-3 at 25-27)

**B.     Plaintiff's Exertion Report**

Plaintiff completed a form entitled "Exertion Questionnaire Since Your Disability Began" on August 16, 2014. (Doc. 11-7 at 11-27) She reported that with her back pain, it was "difficult to sit up straight in an office chair for more than fifteen minutes," and it was "painful to stand in one place for more than ten minutes." (*Id.* at 25) Plaintiff noted she could "walk with [her] cane for about twenty minutes on level ground." (*Id.*)

She noted that if she could, she would "go to the gym per [her] doctors' orders and do the treadmill and lay back bike or go to the mall and walk around." (Doc. 11-7 at 25) Plaintiff indicated that when using a treadmill, she would "go about .33 miles in fifteen minutes." (*Id.*) According to Plaintiff, "[a]fter walking any kind of distance [she was] in more pain," and she would "need to rest or lie down," use an ice pack, or take additional pain medication. (*Id.*)

4

She stated she could "lift up to five pounds," including "[s]mall items from the store" such as laundry soap, medications, empty water bottles, and newspapers. (Doc. 11-7 at 26) Plaintiff indicated she was not supposed to do "heavy lifting over 10 lbs., no twisting, crawling, kneeling, climbing or working on uneven surface[s]." Plaintiff noted that her husband did "the major grocery shopping," and her housework was "limited." (*Id.*) She noted she washed dishes, wiped down counters in their kitchen and bathrooms, and "[l]ight dusting at waist level." (*Id.*) She also could do laundry, explaining the machines were front-loading and on pedestals so they were at her waist level. (*Id.* at 25-26) Plaintiff reported that when doing these chores, she could "go about ten minutes" at a time before she would "need to stop due to back pain, muscle spasms or dizziness." (*Id.* at 26)

**C.     Administrative Hearing Testimony**

Plaintiff testified before the ALJ at a hearing on July 8, 2016. (Doc. 11-3 at 36) She stated that she stopped working on October 25, 2013, after she suffered back pain at work. (*Id.* at 44) Plaintiff said she "was sitting on the floor doing some filing" when she felt "a pop in [her] back and it became excruciating." (*Id.*) She went to the doctor, who determined a screw in Plaintiff's back collapsed from the L5 level to the S1 level. (*Id.*) Plaintiff stated she then "had to have a third back surgery." (*Id.*) Plaintiff said she had not "been a day without pain since then." (*Id.*)

She stated she had arthritis in her hands and trigger finger, which caused "shooting pain down both [her] hands." (Doc. 11-3 at 54) Plaintiff said this "limited [her] ability to do more things," and estimated she could lift and carry five pounds. (*Id.* at 54, 57) She stated she had problems with taking care of her personal hygiene, such as cutting her toenails or shaving her legs. (*Id.* at 54) She also stated that she could not vacuum, sweep, or dust. (*Id.* at 55) Plaintiff testified her husband did "90% of the cooking," and there were days where she could not do the dishes easily, so she would "do them in five to minute increments." (*Id.*)

Plaintiff reported that she was unable to bend, crouch, or get up from the floor without assistance. (Doc. 11-3 at 54) She testified she had "balance issues" and had to use a cane at home. (*Id.*) She estimated she could walk one block, or "10 to 15 minutes" using her cane before she needed to sit and rest. (*Id.* at 55) Plaintiff said she used a walker for any "long walking," such as going to physical therapy, attending doctor's appointments, or going to the farmer's market or mall. (*Id.* at 56)

5

She testified she also suffered from "[d]epression, anxiety and panic attacks," for which she saw a counselor. (Doc. 11-3 at 59) Plaintiff explained her pain management specialist sent her to counseling because she "wasn't dealing with [her] depression" and it was "very depressing" that she could not do what she used to. (*Id.*)

**D.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the alleged onset date of October 25, 2013. (Doc. 11-3 at 21) Second, the ALJ found Plaintiff had "the following severe impairments: obesity; degenerative disc disease of the lumbar spine status post surgical decompressions, fusions, and instrumentations; Meniere's disease; and asthma." (*Id.*) At step three, the ALJ determined these impairments did not meet or medically equal a listed impairment. (*Id.* at 22-23) Next, the ALJ opined:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she is able to lift and carry 20 pounds occasionally and 10 pounds frequently. She is also able to stand and walk for four hours in an eight-hour workday. She must be able to alternate her position for 10 minutes after every one hour, but she will continue to remain on task throughout. The claimant is never able to climb ladders, ropes, or scaffolds. She is able to continually balance, stoop, kneel, crouch, crawl, and climb raps and stairs. She must avoid all exposure to unprotected heights and other hazards. She is able to withstand occasional exposure to smoke and other pulmonary irritants.

(*Id.* at 24) With this residual functional capacity, the ALJ found Plaintiff was "unable to perform any past relevant work." (*Id.* at 27) However, the ALJ found Plaintiff was able to work in "other occupations with jobs existing in significant numbers in the national economy." (*Id.*) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 28-29)

## DISCUSSION AND ANALYSIS

Appealing the decision to deny her applications for benefits, Plaintiff asserts the ALJ did not identify legally sufficient reasons to reject her credibility. (Doc. 18 at 7-11) Defendant argues the ALJ's decision should be affirmed because "the ALJ sufficiently articulated the reasons she discounted Plaintiff's subjective complaints." (Doc. 19 at 9)

**A.     The ALJ's Credibility Analysis**

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms

alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Factors that may be considered by an ALJ in assessing a claimant's credibility include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (evaluating credibility, the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and daily activities).

The ALJ observed Plaintiff's "alleged impairments include back pain; asthma; Meniere's disease; migraines; breast cancer, in remission; and gastroesophageal reflux disease." (Doc. 11-3 at 25) After reviewing Plaintiff's impairments, the ALJ summarized Plaintiff's statements regarding her limitations made both at the hearing and in forms completed for the Social Security Administration, and reviewed the medical record. (*Id.* at 25-26) The ALJ then stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.* at 26) Plaintiff argues these findings related to her subjective complaints are not sufficient, and that "the ALJ made no specific findings regarding Plaintiff's credibility." (Doc. 18 at 9) She argues the ALJ erred through "failing to provide any reasons beyond a general finding and then summarizing the medical evidence." (*Id.* at 10)

### 1. Summary of the medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" may constitute "specific and substantial reasons that

7

undermine . . . credibility." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999). However, "summariz[ing] the medical evidence supporting [the] RFC determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Consequently, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 WL 4138577 at *13 (E.D. Cal. Aug. 3, 2016).

Although Defendant identifies reasons for rejecting Plaintiff's credibility based upon the ALJ's summary of the medical records (*see* Doc. 19 at 7-9), these reasons were not clearly identified by the ALJ to support the adverse credibility determination. Instead, the ALJ merely summarized the evidence of record related to Plaintiff's impairments. (*See* Doc. 11-3 at 25-26)

Importantly, the Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the court cannot engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking"). In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistences in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible, and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the court's analysis could not cure the ALJ's failure. *Id.* at 494.

Similarly, here, the ALJ offered little more than a summary of the medical evidence and boilerplate language to support her rejection Plaintiff's credibility, which is not sufficient to support the adverse credibility analysis.[3] *See Brown-Hunter*, 806 F.3d at 494; *see also Kimbrough v. Colvin*, 2016 WL 403260 at *7 (E.D. Cal. Feb. 3, 2016) ("Under *Brown-Hunter*, the observations an ALJ makes as part of the summary of the medical record is not sufficient to establish clear and convincing reasons for

---

[3] Moreover, a claimant's "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

8

rejecting a Plaintiff's credibility.")

2. Failure to identify the testimony being discounted

Further, as Plaintiff observes, "the ALJ must identify what testimony is not credible." (Doc. 18 at 8) (citing *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). "General findings," such as the ALJ provided here, "are insufficient." *See Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted).

The Ninth Circuit requires an ALJ to "**specifically identify what testimony is credible** and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill* at 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints"). Because the ALJ did not meet this burden, the Court finds the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is

fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony can be credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834. However, courts retain flexibility in crediting testimony as true, and a remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints …"). Consequently, the Court finds a remand for further proceedings and re-evaluation of Plaintiff's testimony is appropriate.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ failed to apply the proper legal standards in evaluating Plaintiff's credibility, and administrative decision should not be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court IS **DIRECTED** to enter judgment in favor of Plaintiff Valerie Ann Francesconi and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 5, 2019**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE